NO. 14-120006

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

### DONAVETTE  ELY

### PLAINTIFFS-APPELLANTS,

### v.

### MOBILE HOUSING BOARD

### DEFENDANT-APPELLEE.


Appeal from the United States District Court
for the Southern District of Alabama
Case No. 1:13-cv-00105-WS-B
The Honorable William Steele
United States District Court Judge

_____

### REPLY BRIEF OF APPELLANT
_____

KENNETH JAMES LAY
HOOD  &  LAY,  LLC
Attorney at Law
1117 SOUTH 22ND STREET
BIRMINGHAM, ALABAMA  35205
Telephone: (205) 323-4123
Telefax: (205) 776-2040

ATTORNEY FOR APPELLANT

## CERTIFICATE OF INTERESTED PERSONS

Appellant, in accordance with Federal Rule of Appellate Procedure 26.1 hereby certifies that, to his knowledge, the following persons have an interest in the outcome of this appeal:

**Honorable William H. Steele,** Chief United States District Court Judge for the Southern District of Alabama

**Kenneth James Lay,** Attorney for Plaintiffs-Appellants

**Raymond Bell,** Attorney for Defendant-Appellee

**Donavette Ely**, Plaintiff-Appellant

**Mobile Housing Board**, Defendant-Appellee

**Stevens Gregory**,  Executive Director Mobile Housing Board

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES .................................................................... iii

ARGUMENT ......................................................................................1

CONCLUSION ...................................................................................29

CERTIFICATE OF COMPLIANCE.......................................................30

CERTIFICATE OF SERVICE……………………………………………………30

**CASES** <span style="float:right">**PAGE**</span>

*Adickes v. S.H. Kress & Co., 398 U.S.* 144, 177 (1970) …………………………21,22

*Allen v. Tyson Foods*, 121 F.3d 642 (11th Cir. 1997)………………………….…..22

*Anderson,* 477 U.S. at 255, 106 S. Ct. at 251……………………………………..21

*Barnhart v. Housing Authority of Union County*, Memorandum
    and Order, Case No. CV-94-1638 (M.D. Pa. 1994)………………………… 19

*Baldwin v. Housing Authority of the city of Camden*,
278 F. supp. 2d 365( DDNJ 2003)…………………………………………..16,20

*Clark v. Alexander*,  85 F.3d 146 (4th Cir. 1996)…………………………………..7

*Davis v. Mansfield Metropolitan Housing Authority,*
751 F.2d 180 (6th Cir. 1984)………..……………………………………………..7

*Driver v. Housing Authority of Racine County*,
713 N.W.2d 670, 673-75 (Wis. Ct. App. 2006) ………………...…………….10,16

*Dudley v. Asture*, 207 US App. Lexis 18149 (2007)……………………………….26

*Edgecomb v. Housing Authority of Town of Vernon*,
    824 F. Supp. 312 (D. Conn. 1993)………………………………………16,18

*Evans v. Housing Authority of the City of Raleigh, Memorandum opinion*
    *(*EDNC2006)(No:5:04-CV-291-BO(1)…………………………………….……20

*Escalera v. New York City Housing Authority,*
    *425 F.2d 853(2nd Cir. 1970)*…….……………………………………..…………10

*Ferguson v. Metropolitan Development and Housing Agency*,
485 F. Supp. 517 (M.D.Tenn.1980)………..……………………………………7

*Goldberg v. Kelly*, 370 U.S. 254 (1970) .......................................7,8,11,13,14,16, 20

*Grannis v. Ordean*, 234 U. S. 385 (1914).…………………………………………..20

*Hairston v. Gainsville Sun Publishing Company*
9 F.3d 913 (11th Cir. 1993)……………………………………………………22

 *Holly v. Housing Authority of New Orleans,*
684 F. Supp. 1363 (E.D. Louisiana 1988)………………………………...…9

*Litsey v. Housing Authority of Bardstown*, Memorandum
   Opinion, Case No. 3:99CV-114 (W.D. Ky. 1999) …………………………19

*McLaughlin v. Callaway*, 382 F. Supp. 885 (SD Ala. 1974)……………………26

*Poole v. Country Club of Columbus, Inc.*
129 F.3d 551 (11th Cir.  1997……………………………………………………..21

*Pratt v. Housing Authority of City of Camden,* No. 05-0544(NLH), 2006 U.S. Dist.
LEXIS 70575, *19-30 (D. N.J. Sept. 27, 2006)..……………………………….16

*Ressler v. Pierce*, 692 F.2d 1212 (9th Cir. 1982)…………………………………7

*Selby v. Ritchie*, Case number 96-1511-A (E. D. Va. 1997) …………………….26

*State ex rel Smith v. Housing Authority of St. Louis*,
21 S.W. 3d 854(Mo Ct. App. 2000)……………………………………………10

Tipton v. Bergrohr GMBH-Siegen,
 965 F.2d at 994, 999 *(11th Cir, 1992)*………………………………………...…,22

United States v. Diebold, Inc.,
369 U.S. 654,  655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962...............................22

## FEDERAL  REGULATIONS

24 C.F.R. § 982.555 ...........................................................................10, 12, 13, 19

55 Fed. Reg. 28538, 28541 (July 11, 1990)…………………………………7, 12

**FEDERAL  RULES  OF  CIVL PROCEDURE**

Rule 56…………………………………………………………………20, 21


Appendices                                                      <u>APPENDIX</u>

## ARGUMENT

**I.    THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DESPITE THERE BEING A DISPUTE IN MATERIAL FACTS.**

MBH's  Motion for Summary Judgment should have been denied by the trial court because, within the meaning of Rule 56, Federal Rules of Civil Procedure, there are disputed issues of material facts.  As to the undisputed facts herein, if all inferences are drawn in favor of the non-moving party (Ely), then she would prevail.   The United States Supreme Court has laid down some important general principles as to how Rule 56 should be applied. The material under consideration must be viewed in the light most favorable to non-moving party (*i.e.*, Plaintiffs herein).  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 177 (1970).  The trial judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 249 (1986).  If reasonable minds could differ, judgment should not be entered.  *Id.* at 250-251.

Our Eleventh Circuit Court of Appeals has further elaborated on these principles. "A fact is material if, under applicable substantive law, it might affect the outcome of the case." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551,

1

553(11 Cir. 1997). "It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*, citing *Tipton v. Bergohr GMBHSiegen*, 965 F.2d 994, 998 (11th Cir. 1992). "The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913,919 (11 Cir. 1993) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* "Where a reasonable fact finder may draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment."

MHB's Motion for Summary Judgment contained several assertions as "undisputed facts" which apparently the trial court accepts as well. However, many of these "Facts" are merely allegations that MHB believes to be true. Many of these assertions are in dispute. In this category would be MHB's assertion that it followed all of the pertinent regulations and requirements of federal law. Moreover, Ely consistently maintained that MHB denied her requests for an extension of her voucher based on a reasonable accommodation request because of her son's disability. It is clear that these "Facts" are material to the issues raised by Ely's Complaint that assert MHB's denial of Due Process to her in the manner in which the adverse decision was made and upheld. It is difficult to see how the District Court could determine that there was no dispute of material facts

2

in this case based on the evidence submitted by Ely.  Consequently, the District

Court erred in granting MHB's motion for summary judgment.


**II.**     **THE DISTRICT COURT ERRED WHEN  IT FAILED TO FIND
THAT THE MOBILE HOUSING BOARD VIOLATED ELY'S
RIGHTS AND DISCRIMINATED AGAINST HER WHEN IT
FAILED TO EXTEND HER SECTION 8 VOUCHER BASED ON
HER REASONABLE ACCOMODATION REQUESTS.**

   Ely's discrimination claims are clearly based on an assertion that MBH failed

to "reasonably accommodate" her son's disability by either failing to extend her

voucher to allow time for finding an adequate dwelling within MHB's guidelines

and/or failing to raise the amount of voucher payment.     An individual with a

"physical or mental impairment" that "substantially limits" one or more of his or

her "major life activities" is considered to be "handicapped" and "disabled" for

purposes of the FHAA, the Rehabilitation Act and the ADA. 29 U.S.C. §

705(20)(B); 42 U.S.C. §§ 3602(h)(1), 12102(1)(A)(1). **During the relevant**

**period of time, Ely's son received benefits under the Social Security Act.[4]**

**Individuals who qualify for such benefits ordinarily fall within the class of**

**persons entitled to statutory protection under the FHAA, the Rehabilitation**

**Act and the ADA**. _Sinisgallo,_ 865 F.Supp.2d at 338.  Consequently, Ely and her

son fall within the category of persons entitled to statutory protection under the

---

[4] The District Court completely ignores the undisputed fact that Ely's son receives social security
disability benefits based on his disabilities.

3

applicable anti-discrimination provisions. *Bragdon v. Abbott,* 524 U.S. 624, 630-632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

Ely demonstrated that the MHB "knew or reasonably should have known" of her son's disability and concomitant need for reasonable accommodations thereby meeting her burden of her "failure-to-accommodate" claims *Bentley v. Peace & Quiet Realty 2 LLC,* 367 F.Supp.2d 341, 345 (E.D.N.Y. 2005). There is no real dispute here by MHB that Ely had a disabled son or that she was seeking a reasonable accommodation. MHB was clearly aware of the son's disability and his receipt of SSI for the disability. Ely made written request on numerous occasions, and provided requested letters from her son's doctors regarding his disability and the reasonable accommodation request. Likewise, MHB does not dispute that it refused to extend her voucher based on a reasonable accommodation request. Ely made the request for the reasonable accommodation of a voucher extension because she had difficulty finding an acceptable qualified housing unit due to her son's disability. Moreover, MHB does not dispute that if failed to grant Ely an extension of time for her voucher based on her a reasonable accommodation request. In fact, in her Deposition, Ms. Griffin, MHB's employee, states that the housing authority could not extend the deadline beyond 120 days even when a reasonable accommodation request is made, and has a policy to that effect. This is clearly a misunderstanding of the law on the part of

4

the housing authority.  That statement alone shows that MHB is violating the law

when it comes to disability reasonable accommodation requests.  In effect, MHB

has a policy in effect which automatically denies any section 8 participant an

extension beyond 120 days notwithstanding any circumstances or reasonable

accommodation request based on disabilities.  This is clearly a violation of the law.

Ely met her burden to inform MHB that her son was a "qualified

handicapped person" who was "being denied an equal opportunity to use and enjoy

a dwelling." _Andover **HousingAuthority** v. Shkolnik,_ 820 N.E.2d 815, 826 (Mass.

2005).   See _Conneen v. MBNA America Bank, N.A.,_ 334 F.3d 318, 332 (3d Cir.

2003).  An individual seeking reasonable accommodations for a disability need not

use "magic" words.[5]   _Boston **Housing Authority** v. Bridgewaters,_ 898 N.E.2d 848,

859 (Mass. 2009). A generalized request for assistance conveyed by a close family

member is ordinarily sufficient. _Taylor,_ 184 F.3d at 313.

The FHAA was enacted for the purpose of ending the unnecessary exclusion

of handicapped individuals from the American mainstream. _Helen L. v._

_DiDario,_ 46 F.3d 325, 333, n. 14 (3d Cir. 1995).   It affirmatively requires covered

entities "to make reasonable accommodations in rules, policies, practices, or

---

[5] The District Court would have Ely use specific language which is not required by the law.
Moreover, the analysis used by the District Court defies logic or common sense.  It is clear based
on the facts that Ely made clear to the housing authority that she needed additional time and was
requesting an extension based on a reasonable accommodation of her son's disability.  Instead of
giving Ely the benefit of the doubt, the District Court resolves all doubts in favor of the housing
authority.

5

services, when such accommodations may be necessary to afford [a handicapped person an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).   Although a covered agency  need not "carry out" a "requested accommodation" in order to demonstrate its futility, the FHAA is violated whenever a housing section 8 participant tenant whose disability could have been reasonably accommodated is nevertheless terminated on the basis of conduct attributable to his or her disabling impairments. _Douglas v. Kriegsfeld Corp.,_ 884 A.2d 1109, 1125-1126 (D.C. Cir. 2005).   A plaintiff attempting to establish a violation of the FHAA, the Rehabilitation Act, or the ADA must demonstrate that his or her disability could have been reasonably accommodated.   See _Donahue v. Consolidated Rail Corp.,_ 224 F.3d 226, 233-235 (3d Cir. 2000).   The reasonableness of a proposed accommodation is a question of fact. _Buskirk v. Apollo Metals,_ 307 F.3d 160, 170-171 (3d Cir. 2002).   When the failure of a public **housing** agency to conduct the "individualized assessment" contemplated under the applicable regulations results in the eviction of an individual whose handicap or disability could have been reasonably accommodated, an actionable statutory violation occurs.   _Sinisgallo,_ 865 F.Supp.2d at 336.  This principle flows from the fact that a covered entity's refusal to reasonably accommodate the needs of handicapped and disabled individuals constitutes a prohibited form of "discrimination." _City of Edmonds v. Oxford House, Inc.,_ 514 U.S. 725, 729, 115

S.Ct. 1776, 131 L.Ed.2d 801 (1995).   No violation occurs, however, if an individual's disability could not have been reasonably accommodated in any event.  *Mengine v. Runyon,* 114 F.3d 415, 420-421 (3d Cir. 1997).   The statutes requiring covered entities to accommodate the needs of disabled individuals do not "demand action beyond the realm of the reasonable." *US Airways, Inc. v. Barnett,* 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).   "Failure-to-accommodate" claims arising in the **housing** context must be considered in accordance with a burden-shifting framework.  *Sharpvisions, Inc. v. Borough of Plum,* 475 F.Supp.2d 514, 526 (W.D.Pa. 2007).  The contours of that framework were established by the United States Court of Appeals for the Third Circuit in *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir. 1996), and *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment,* 284 F.3d 442 (3d Cir. 2002).

In *Hovsons,* the Court of Appeals held that a defendant alleged to have violated the FHAA by failing to accommodate a handicapped person's disability bears the burden of establishing the unavailability or unreasonableness of an accommodation that would have enabled that person to use and enjoy a dwelling on terms equal to others. *Hovsons,* 89 F.3d at 1103-1104.  In order to satisfy her initial burden, Ely need only establish a nexus between the reasonable accommodations that she was seeking and their necessity for affording her an equal opportunity to enjoy public **housing**. *McKivitz v. Township of Stowe,* 769 F.Supp.2d 803, 825-826

7

(W.D.Pa. 2010). A proposed accommodation cannot be said to be "necessary" if it "provides no direct amelioration of a disability's effect." _Bryant Woods Inn, Inc. v. Howard County,_ 124 F.3d 597, 604 (4th Cir. 1997).

A public entity covered by the Rehabilitation Act and the ADA must "make reasonable modifications in policies, practices, or procedures [that] are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the [relevant] service, program, or activity." 28 C.F.R. § 35.130(b)(7).   In this vein, MHB's  rigid adherence to its policy of denying Section 8 voucher extensions and increases in voucher amounts to those who are having difficulty finding suitable housing due to a disability constituted a statutory violation. The applicable regulation provides that a decision to deny or terminate an individual's assistance must be made in conformity with the "reasonable accommodation" requirements existing under federal law. 24 C.F.R. § 982.552(c)(2)(iv). This requirement applies with equal force to a public **housing** agency's decision to refuse an extension of a voucher term or increase the amount.   24 C.F.R. § 982.204(c)(2). _McKivitz,_ 769 F.Supp.2d at 820 (explaining that "a statutory violation occurs as soon as a request for a federally-mandated `reasonable accommodation' is denied, regardless of whether state law permits the requested relief to be sought in subsequent judicial proceedings").   A PHA must allow a tenant to extend the time allotted to search

for an apartment if necessary as a reasonable accommodation.  See.  24 C.F.R. §§ 982.303(b)(2), 8.28(a)(4) (2012); Housing Choice Voucher Family Moves with Continued Assistance, PIH Notice 2012-42 (Oct. 2, 2012) 5;  Burgess v. Alameda Hous. Auth., 98 F. App'x 603, 605–06 (9th Cir. 2004) (reversing district court's dismissal of plaintiff's claim against PHA for failure to reasonably accommodate her disability by granting voucher extension.    Accordingly, MHB denial of Ely's reasonable accommodation request based on her son's disability to extend the term of her section 8 voucher, and MHB is liable for any damages she suffered as a result of its actions.

## III.  THE DISTRICT COURT COMMITTED ERROR WHEN IT GRANTED SUMMARY JUDGMENT DESPITE MHB VIOLATING ELY'S RIGHTS AND FEDERAL LAW BY AUTOMATICALLY TERMINATING HER FROM THE SECTION 8 PROGRAM UPON THE EXPIRATION OF HER VOUCHER WITHOUT ALLOWING HER TO APPLY FOR OR BE CONSIDERED FOR AN EXTENSION.

MHB has violated the HUD regulations set forth at 24 C.F.R. §§ 887.165 and 882.209(d) by automatically terminating the plaintiff rather than considering her for extensions. The regulation setting forth the time restrictions on vouchers provides for an initial term of 60 days and an extension of  60 days.  The PHA has discretion to extend the term of a housing voucher for a total term of not more than 120 days).   In deciding whether or not to extend the housing voucher, the PHA must consider the following:(1) What kind of efforts the family has made to find a

suitable dwelling; and(2) Whether there is a reasonable possibility that the family may, with the additional advice or assistance, if any, find a suitable unit.(c) *Interchangeability.* If the housing voucher was issued in exchange for a certificate (see § 887.155(a)(1)(iv)), the initial term and the extended term, if applicable, are measured from the date the certificate was issued.(d) *Submitting request for lease approval.* The family must submit a request for lease approval to the PHA during the term of the housing voucher.

(2) If a Certificate expires or is about to expire, a Family may submit the Certificate to the PHA with a request for an extension. The PHA shall review with the Family the efforts it has made to find a suitable dwelling unit and the problems it has encountered and shall determine what advice or assistance might be helpful. If the PHA believes that there is a reasonable possibility that the Family may, with the additional advice or assistance, if any, find a suitable unit, the PHA may grant one or more extensions not to exceed a total of 60 days. Expiration of a Certificate shall not preclude the Family from filing a new application for another certificate.

In this case, MHB stated in its letter to Ely regarding her new voucher issued on July 19, 2010 that no requests for extensions of time would be granted to Ely. In other words, MHB had already determined that Ely would be automatically terminated from the program upon the expiration of the Voucher on September 18, 2010.   MHB's decision as stated in its letter of refusing to consider a request for

10

an extension by Ely is inconsistent with the plain meaning 24 C.F.R. §§ 887.165 and 882.209.   Section 882.209(d), in particular, requires MHB to consider requests for extensions if a certificate "expires or is about to expire."   Neither of the pertinent HUD regulations states that extensions must be requested before the voucher or certificate expires. The HUD handbook similarly does not require that extension requests be made before the initial term or first extension expires. These provisions do indicate that if the certificate or voucher expires after the initial or extended term without submission of a request for lease approval, the family may reapply. While extensions are discretionary, MHB had the responsibility to at least allow the request to be made by Ely, and *consider* the request and decide whether to use its discretion. Automatic termination and the refusal to accept an extension request mean that MHB never even bothered to consider the request, which it must do under the regulations in light of enumerated factors.   While, participants do not have the absolute right to receive an extension, they do have the right to ask for one and have their request considered pursuant to the stated regulatory standards up until 120 total days have expired.[6]

Local PHAs like MHB are vested with authority to promulgate rules and regulations to administer the section 8 program under 24 C.F.R. § 882.204(b)(3).

---

[6] As previously stated, the District Court made an error regarding its factual findings when it characterized Ely's voucher issued on July 19, 2010 as an extension when it was clearly a newly issued voucher.  Accordingly, even without the reasonable accommodation request, Ely's voucher could have been extended to November 16, 2010 which is the full 120 day period from July 19, 2010.

11

Where local policies violate the purpose of the section 8 program and impose criteria in addition to that in the federal statutes and regulations, the local rule must fall. *See, e.g.,* Ferguson v. Metropolitan Development and Housing Agency*, 485 F.Supp. 517, 524-527 (M.D.Tenn.1980). , as such extensions were discretionary under the regulations in effect at the time").   MHB's policy has the effect of adding unauthorized criteria for continued participation in the program that the federal regulations do not require.   It is clear that requests for extensions may be made as long as the 120-day total limit has not expired.   The HUD regulations do not imply that extensions, like proposed leases, must be submitted before expiration. The regulatory language points to the opposite conclusion. Like the *Ferguson* case, MHB has imposed additional criteria.  See *Chesir v. Housing Authority of City of Milwaukee,* 801 F. Supp. 244, 248 (E.D. Wis. 1992).    In deciding whether or not to extend the housing voucher, the PHA *must* consider the following:(1) What kind of efforts the family has made to find a suitable dwelling; and(2) Whether there is a reasonable possibility that the family may, with the additional advice or assistance, if any, find a suitable unit.  The regulation governing certificates similarly requires that the "PHA *shall* review with the family" these same kinds of facts in deciding whether to grant an extension. 24 C.F.R. § 882.209(d)(2) (emphasis added).  MHB's summary termination of benefits when the last day of the initial term is over ignores the mandate of the words

"must" and "shall." The regulations create a mandatory duty to consider requests for extensions in light of those factors, which MHB did not do in this case. MHB's automatic termination not only adds an additional requirement for the plaintiff, but precedes and precludes MHB's consideration of factors that it must consider.

> ### IV.    THE DISTRICT COURT ERRED BY FINDING THAT ELY HAS  NO  PROTECTED PROPERTY INTEREST IN HER SECTION 8 HOUSING SUBSIDY AND HER PROCEDURAL DUE PROCESS RIGHTS WERE NOT VIOLATED WHEN MHB WRONGFULLY TERMINATED THOSE BENEFITS BY FAILING  TO GIVE HER AN ADEQUATE NOTICE AND HEARING.

The due process clause of the Fourteenth Amendment guarantees that a state actor cannot deprive someone of a property interest without fair procedure. Gonzaga University v. Doe, 536 U.S. 273,279 (2002) (1983);  Zinermon v. Burch, 494 U.S. 113, 125 (1990).   Federal courts have found that continued participation in the Section 8 voucher program is a property interest protected by the requirement of procedural due process, **at least** until the voucher expires or is terminated for good reason.  Davis v. Mansfield Metropolitan Housing Authority, 751 F.2d 180, 184 (6th Cir. 1984);  Simmons v. Drew, 716 F.2d 1160, 1162 (7th Cir. 1983); Stevenson v. Mills, 579 F. Supp. 2d 913, 919 (N.D. Ohio 2008); Chesir v. Housing Authority City of Milwaukee, 801 F. Supp. 244, 248 (E.D. Wis. 1992).  Public housing authorities must comply with regulations promulgated by the Department of Housing and Urban Development in administering Section 8

13

vouchers. 24 C.F.R. § 982.52(a).  The department's regulations have the force of law and qualify as enforceable rights under § 1983.  If they are sufficiently specific and definite.  Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 431 (1987) (allowing tenants to use § 1983 to recover past overcharges violating rent-ceiling provision of Public Housing Act);  see also Price v. Pierce, 823 F.2d 1114, 1122 (7th Cir. 1987).   Under this doctrine, a Section 8 existing housing tenant is entitled to strong procedural protections when a PHA seeks to withdraw Section 8 housing payments.  The action of the PHA is clearly a state action.  Burr v. New Rochelle Municipal Housing Authority, 479 F.2d 1165, 1167 (2d Cir. 1973).

In *Goldberg*, the U. S. Supreme Court set the standards for pre-termination hearings for public assistance, which is a constitutionally protected property interest entitled to procedural due process.  The Supreme Court explained that due process requires that a recipient:  (1)have a timely and **adequate notice detailing** the reasons for the proposed termination; (2) have  an **effective opportunity to defend** by confronting any adverse witnesses and by presenting his own arguments and evidence orally; (3) have a right to be represented by counsel; (4) have a decision, **based solely on evidence adduced at the hearing**, in which the reasons for the decision are set forth; (5) have an **impartial decision make**r.  The court further explained that these rights are important "where recipients have challenged

14

proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases." *Goldberg, 397 U. S. at 266-271.*

### A.    MHB violated due process requirements and 24 C.F.R. § 982.555(c)(2) as to notice of the grounds for termination.

A PHA may only rely on the grounds for termination contained in the notice. See. *Holly v. Housing Authority of New Orleans,* 684 F. Supp. 1363 (E.D. Louisiana 1988). *Driver v. Housing Authority of Racine County*, 713 N. W. 2d 670 (2006) held that "…public policy mandates strict compliance with the written notice requirement.  First, due process imposes the burden of providing adequate notice on the government, not on the individual."

Also, HUD's regulations require that the termination notice must "contain a brief statement of reasons for the decision."  24 C.F.R. § 982.555(c)(2).  The PHA may only terminate on the basis of grounds set forth in the notice, not on other grounds.  See. *State ex rel Smith v. Housing Authority of St. Louis*, 21 S.W. 3d 854(Mo Ct. App. 2000).  In addition, the hearing officer must base the decision on grounds stated in the termination notice.  *Ellis v. Ritchie,* 803 F. Supp. 1097(E.D. Va. 1992).    The requirement of notice is to inform the tenant of the allegations so she can prepare a defense.  It must be sufficiently **specific** to enable the tenant to prepare and present rebuttal evidence at her hearing.  See *Billington v. Underwood*,

15

613 F.2d  91(5th Cir. 1980).   The PHA must give the family prompt written notice

that contains a brief statement of reasons for the decision; that informs the

participant that she may request an informal hearing on the decision; and that states

the deadline for the family to request the hearing.  24 C.F.R. § 982.555(c)(2)

(2006).  In the alternative if there is no right to request a hearing, the notice must

so state.

The notice must be sufficiently factually specific that it puts the family on

notice of the factual underpinnings for the proposed termination.  See *Edgecomb v.*

*Housing Authority of the Town of Vernon,* 824 F. Supp. 312, 313 (D. Conn. 1993;

*Billington v. Underwood*, 613 F. 2d 91 (5th Cir. 1980).  The purpose of requiring

that notice be given to the tenant before the hearing is to insure that the tenant is

**adequately informed** of the nature of the evidence against him so that he can

effectively rebut that evidence.  The tenant should be notified in advance of the

**complete grounds** for the proposed action, should have access to all the

information upon which any decision will be based, and should be afforded the

right to confront and cross-examine witnesses in appropriate circumstances.

*Escalera v. New York City Housing Authority, 425 F.2d 853(2nd Cir. 1970).  See*

*also  Basco v. Machin,* 514 F.3d 1177 (11th Cir.2008); and  *Ervin v. HABD* (11th

Cir. June 17, 2008).

MHB in this case failed to provide any specific allegations as to the Ely's

alleged violations of section 8 regulations.  Moreover, if MHB's contention is that Ely was not entitled to a hearing then the notice was required to state that she was not entitled to a hearing based on the voucher's expiration.  In fact, the notice specifically stated that she was entitled to a hearing but MHB failed to provide her the hearing she requested pursuant to the notice.

### B.    MBH violated Ely's Due Process Rights by Failing to Provide her with an adequate hearing.

The PHA must give the recipient an opportunity for an adequate informal hearing to consider whether the decision to terminate benefits is in accordance with due process and federal regulations.  In order to have an adequate hearing a recipient must have an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally; have a right to be represented by counsel; have a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth; and have an impartial decision maker. *Escalera v. New York City Housing Authority, 425 F.2d 853(2nd Cir. 1970). See also  Basco v. Machin,* 514 F.3d 1177 (11th Cir.2008); and *Ervin v. HABD* (11th Cir. June 17, 2008).

The Court in *Davis v. Mansfield Metropolitan Housing Authority*, 751 F.2d 180 (6th Cir. 1984), applied the factors set forth in *Mathews v. Eldridge* and held that tenants who are terminated from a Section 8 program suffered a great loss by

being deprived of their present shelter; the risk of erroneous deprivation was great; and the interest of the housing authority was to insure payment of meritorious damage and rent claims, while being free from unduly burdensome and expensive administrative claims in carrying out its duties. Upon considering these factors, the Davis court held that Section 8 termination hearings should include the right of a participant to cross-examine witnesses. *Davis* at 185.

In the present case, MHB does not dispute that it failed to honor Ely's request for a hearing which was based on the letter she received advising her of her right to request a hearing.   Accordingly, Ely received no due process whatsoever regarding her termination or removal from the program.  As previously stated, MHB's only contention is that it was not required to offer her a hearing.  However it fails to explain why it would not be required to have a hearing once one was offered to Ely.  Griffin, MHB's corporate representative admitted that regulation were not followed and that procedures were not handled properly in Ms. Ely's case.  She further stated she could not answer why things were handled the way were in Ms. Ely's case and that the resulting loss of Ely's housing was not what was intended by the section 8 housing program.   Moreover, under Section 504 of the Rehabilitation Act, federally assisted housing providers are required to create grievance procedures designed to address claims of discrimination against program participants with disabilities.  See 24 C.F.R. § 8.53 (2012)  See also.  <u>Chesir  v.</u>

Housing Authority Milwaukee, 801. F.supp. 244 (E.D. Wis. 1992); Yow v.
Donovan, 2007 N.Y. MISC. Lexis 2867(Supp. Court Apr. 9, 2007).


### C.    The Discrimination Claims

The Fair Housing Amendments Act of 1988 ("FHAA") amended the FHA to
add subsection (f) to 42 U.S.C. § 3604. Pub. L. No. 100-430, § 6; 102 Stat. 1619,
1620-1621 (1988). The provisions of that subsection relevant to this case provide
as follows:

§ 3604. Discrimination in the sale or rental of **housing** and other prohibited
practices.

As made applicable by section 803 [42 U.S.C. § 3603] and except as exempted by
sections 803(b) and 807 [42 U.S.C. §§ 3603(b), 3607], it shall be unlawful—

* * *

(B) a refusal to make reasonable accommodations in rules, policies, practices, or
services, when such accommodations may be necessary to afford such person
equal opportunity to use and enjoy a dwelling. . . . 42 U.S.C. § 3604(f).[5] These
provisions are applicable to housing units provided by the Authority.  42 U.S.C. §
3603(a). An aggrieved individual may commence a civil action to vindicate his or
her rights under the FHAA. 42 U.S.C. § 3613(a).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). MHB's operations qualify as a "program or activity" governed by the Rehabilitation Act. 29 U.S.C. § 794(b)(1). Section 504 has been construed to require recipients of federal financial assistance to reasonably accommodate the needs of disabled individuals. *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1101 (3d Cir. 1996) (discussing the similarities between the requirements of the FHAA and the requirements of the Rehabilitation Act). The Rehabilitation Act makes the "remedies, procedures and rights" set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*] available to individuals aggrieved by violations of § 504. 29 U.S.C. § 794a(a)(2). The Supreme Court has found an implied private right of action within Title VI. *Barnes v. Gorman,* 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002). Since Title VI's remedial scheme is incorporated within the Rehabilitation Act, plaintiffs alleging violations of § 504 have a private right of action under federal law. *Chedwick v. UPMC,* 619 F.Supp.2d 172, 181, n.4 (W.D.Pa. 2007).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

20

the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term

"public entity" is defined broadly enough to include a public housing agency. 42

U.S.C. § 12131(1)(A)-(B);  *Sinisgallo v. Town of Islip Housing Authority,* 865

F.Supp.2d 307, 337 (E.D.N.Y. 2012). Title II defines the term "qualified individual

with a disability" as an individual with a disability who, with or without reasonable

modifications to rules, policies, or practices, the removal of architectural,

communication, or transportation barriers, or the provision of auxiliary aids and

services, meets the essential eligibility requirements for the receipt of services or

the participation in programs or activities provided by a public entity.  42 U.S.C. §

12131(2). Violations of Title II may be redressed in the same manner as violations

of § 504. See 42 U.S.C. § 12133. An individual aggrieved by a violation of Title II

may commence a civil action against the public entity responsible for that

violation. *Frame v. City of Arlington,* 657 F.3d 215, 223 (5th Cir. 2011). Public

housing agencies operating under the Housing Act are required to certify their

compliance with the FHAA, the Rehabilitation Act and the ADA on an annual

basis. 42 U.S.C. § 1437c-1(d)(16).

　　Ely's discrimination claims arise under the FHAA, the Rehabilitation Act

and the ADA.  "All three statutory schemes embrace the concept that, in certain

instances, the policies and practices of covered entities must be modified to

accommodate the needs of the disabled." *Wisconsin Community Services, Inc. v. City of Milwaukee,* 465 F.3d 737, 746 (7th Cir. 2006).  The framework utilized to evaluate claims arising under the FHAA can typically be employed to adjudicate parallel claims arising under the Rehabilitation Act and the ADA.  *Dr. Gertrude A. Barber Center, Inc. v. Peters Township,* 273 F.Supp.2d 643, 652 (W.D.Pa. 2003). A handicapped plaintiff proceeding under the FHAA can rely on a "disparate treatment," "disparate impact" or "reasonable accommodation" theory.  *Community Services, Inc. v. Wind Gap Municipal **Authority**,* 421 F.3d 170, 176 (3d Cir. 2005).  Ely's discrimination claims are clearly based on an assertion that MBH failed to "reasonably accommodate" her son's disability by either failing to extend her voucher to allow time for finding an adequate dwelling within MHB's guidelines and/or failing to raise the amount of voucher payment.

An individual with a "physical or mental impairment" that "substantially limits" one or more of his or her "major life activities" is considered to be "handicapped" and "disabled" for purposes of the FHAA, the Rehabilitation Act and the ADA. 29 U.S.C. § 705(20)(B); 42 U.S.C. §§ 3602(h)(1), 12102(1)(A)(1). During the relevant period of time, Ely's son received benefits under the Social Security Act.   Individuals who qualify for such benefits ordinarily fall within the class of persons entitled to statutory protection under the FHAA, the Rehabilitation Act and the ADA.*Sinisgallo,* 865 F.Supp.2d at 338. Consequently, Ely and her son

fall within the category of persons entitled to statutory protection under the applicable anti-discrimination provisions. *Bragdon v. Abbott,* 524 U.S. 624, 630-632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

In order to proceed with her "failure-to-accommodate" claims, Ely must demonstrate that the MBH "knew or reasonably should have known" of her son's disability and concomitant need for reasonable accommodations. *Bentley v. Peace & Quiet Realty 2 LLC,* 367 F.Supp.2d 341, 345 (E.D.N.Y. 2005). There is no real dispute here by MHB that Ely had a disabled son or that she was seeking a reasonable accommodation. MHB was clearly aware of the son's disability and his receipt of SSI for the disability. Ely made written request on numerous occasions, and provided requested letters from her son's doctors regarding his disability and the reasonable accommodation request. Likewise, MHB does not dispute that it refused to extend her voucher based on a reasonable accommodation request. Ely made the request for the reasonable accommodation of a voucher extension because she had difficulty finding an acceptable qualified housing unit which was within the "shopping amount" of the voucher she was given for a four bedroom unit by MHB. Moreover, MHB does not dispute that if failed to raise Ely's voucher amount as a reasonable accommodation . She met her burden to inform MHB that she was a "qualified handicapped person" who was "being denied an equal opportunity to use and enjoy a

23

dwelling" *Andover* ***HousingAuthority*** *v. Shkolnik,* 820 N.E.2d 815, 826 (Mass. 2005).    See *Conneen v. MBNA America Bank, N.A.,* 334 F.3d 318, 332 (3d Cir. 2003).  An individual seeking reasonable accommodations for a disability need not use "magic" words. *Boston* ***Housing Authority*** *v. Bridgewaters,* 898 N.E.2d 848, 859 (Mass. 2009). A generalized request for assistance conveyed by a close family member is ordinarily sufficient. *Taylor,* 184 F.3d at 313.

The FHAA was enacted for the purpose of ending the unnecessary exclusion of handicapped individuals from the American mainstream. *Helen L. v. DiDario,* 46 F.3d 325, 333, n. 14 (3d Cir. 1995).  It affirmatively requires covered entities "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped person an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).  Although a covered agency  need not "carry out" a "requested accommodation" in order to demonstrate its futility, the FHAA is violated whenever a housing section 8 participant tenant whose disability could have been reasonably accommodated is nevertheless terminated on the basis of conduct attributable to his or her disabling impairments. *Douglas v. Kriegsfeld Corp.,* 884 A.2d 1109, 1125-1126 (D.C. Cir. 2005).

A plaintiff attempting to establish a violation of the FHAA, the Rehabilitation Act or the ADA must demonstrate that his or her disability could

have been reasonably accommodated.   See *Donahue v. Consolidated Rail Corp.,* 224 F.3d 226, 233-235 (3d Cir. 2000). The reasonableness of a proposed accommodation is a question of fact.  *Buskirk v. Apollo Metals,* 307 F.3d 160, 170-171 (3d Cir. 2002). When the failure of a public **housing** agency to conduct the "individualized assessment" contemplated under the applicable regulations results in the eviction of an individual whose handicap or disability could have been reasonably accommodated, an actionable statutory violation occurs. *Sinisgallo,* 865 F.Supp.2d at 336. This principle flows from the fact that a covered entity's refusal to reasonably accommodate the needs of handicapped and disabled individuals constitutes a prohibited form of "discrimination." *City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 729, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). No violation occurs, however, if an individual's disability could not have been reasonably accommodated in any event. *Mengine v. Runyon,* 114 F.3d 415, 420-421 (3d Cir. 1997). The statutes requiring covered entities to accommodate the needs of disabled individuals do not "demand action beyond the realm of the reasonable." *US Airways, Inc. v. Barnett,* 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).   "Failure-to-accommodate" claims arising in the **housing** context must be considered in accordance with a burden-shifting framework. *Sharpvisions, Inc. v. Borough of Plum,* 475 F.Supp.2d 514, 526 (W.D.Pa. 2007). The contours of that framework were established by the United

States Court of Appeals for the Third Circuit in *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir. 1996), and *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment,* 284 F.3d 442 (3d Cir. 2002).  In *Hovsons,* the Court held that a defendant alleged to have violated the FHAA by failing to accommodate a handicapped person's disability bears the burden of establishing the unavailability or unreasonableness of an accommodation that would have enabled that person to use and enjoy a dwelling on terms equal to others.  *Hovsons,* 89 F.3d at 1103-1104. The Court explained in *Lapid-Laurel,* that "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." *Lapid-Laurel,* 284 F.3d at 457.

In order to satisfy her initial burden,  Ely need only establish a nexus between the reasonable accommodations that she was seeking and their necessity for affording her an equal opportunity to enjoy public **housing**. *McKivitz v. Township of Stowe,* 769 F.Supp.2d 803, 825-826 (W.D.Pa. 2010). A proposed accommodation cannot be said to be "necessary" if it "provides no direct amelioration of a disability's effect. "*Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597, 604 (4th Cir. 1997).

A public entity covered by the Rehabilitation Act and the ADA must "make reasonable modifications in policies, practices, or procedures [that] are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the [relevant] service, program, or activity." 28 C.F.R. § 35.130(b)(7).   In this vein, MHB's  rigid adherence to its policy of denying Section 8 voucher extensions and increases in voucher amounts to those who are having difficulty finding suitable housing due to a disability constituted a statutory violation. The applicable regulation provides that a decision to deny or terminate an individual's assistance must be made in conformity with the "reasonable accommodation" requirements existing under federal law. 24 C.F.R. § 982.552(c)(2)(iv). This requirement applies with equal force to a public **housing** agency's decision to refuse an extension of a voucher term or increase the amount.   24 C.F.R. § 982.204(c)(2). _McKivitz,_ 769 F.Supp.2d at 820 (explaining that "a statutory violation occurs as soon as a request for a federally-mandated `reasonable accommodation' is denied, regardless of whether state law permits the requested relief to be sought in subsequent judicial proceedings").   A PHA must allow a tenant to extend the time allotted to search for an apartment if necessary as a reasonable accommodation.  See  24 C.F.R. §§ 982.303(b)(2), 8.28(a)(4) (2012); Housing Choice Voucher Family Moves with Continued Assistance, PIH Notice 2012-42 (Oct. 2, 2012) 5; _Burgess v. Alameda_

27

*Hous. Auth.*, 98 F. App'x 603, 605–06 (9th Cir. 2004) (reversing district court's

dismissal of plaintiff's claim against PHA for failure to reasonably accommodate

her disability by granting voucher extension.

Generally, a PHA may set its payment standard at 90–110% of the listed

Fair Market Rent (FMR) for the area, as set by HUD.   24 C.F.R. §982.503(b)(1)(i)

(2012).  However, a prospective tenant may have difficulty finding a unit that is

both accessible and affordable. Recognizing this  difficulty, HUD regulations

require that a PHA increase the payment standard for a voucher holder if necessary

as a reasonable accommodation.  § 982.505(d).  A housing authority may grant a

request to increase the payment standard up to 110% of FMR without first

requesting HUD approval.   The HUD Field Office Public Housing Director for a

given region can approve an increase in the payment standard that falls between

110–120%. For increases above 120%, the housing authority must request a waiver

from HUD headquarters.   See. PIH 2008-13, supra note 95; see also *Liberty Res.,*

*Inc. v. Phila. Hous. Auth.*, 528 F. Supp. 2d 553, 559 (E.D. Pa. 2007).   A tenant

may request a waiver to the payment standard only after the family has located a

unit.  This may prove to be a problem where the landlord will not hold a unit until

the higher payment standard is approved, and the tenant cannot afford rent without

assistance. Also, once HUD approves an exception payment standard, it will

remain in effect until a still-higher exception payment standard is necessary and

approved. In the past, HUD has sometimes only allowed the waiver to last for a year, or in other cases, families have had to re-verify the need each year.

Accordingly, MHB's denial of Ely's reasonable accommodation request based on her son's disability to extend the term of her section 8 voucher or the amount of her voucher was a violation her rights, and MHB is liable for any damages she suffered as a result of its actions.  Accordingly, the district court erred in granting MHB's summary judgment and must be reversed by this Court.

## V.    CONCLUSION

The District Court erred by granting a summary judgment in this matter. Accordingly, the trial court's order is due to be reversed and the matter remanded for a trial on the merits.

Respectfully submitted,


/s/  Kenneth James Lay
Kenneth James Lay
HOOD  &  LAY , LLC
1117 South 22nd Street
Birmingham  AL  35205
Tel. (205)323-4123
Fax (205)776-2040
Email:   kenneth.j.lay@gmail.com

29

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I hereby certify that this brief contains  6,964  words excluding the parts of the brief exempted by Rule 32(a)7(B)(iii) of the Federal Rules of Appellate Procedure.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of the foregoing Appellant's Reply Brief  on the following parties in interest either by first class U.S. Mail, postage prepaid, or via electronically on this the 22nd day of December 2014.

Raymond L. Bell, Jr., Esq.
BELL LAW FIRM, P.C.
P.O. Box 1932
Mobile, Alabama 36633

*/s/ Kenneth James Lay*_____
Of Counsel